We'll hear argument next in Case 18-556, Kansas v. Glover. General Kraus. Thank you, Mr. Chief Justice, and may it please the Court. Reasonable suspicion is a minimal standard. It permits a brief investigation upon an officer's objective and particularized suspicion. Common-sense judgments and inferences about ordinary experiences are the touchstone of reasonable suspicion. Here, Deputy Mayor found a vehicle on the road, learned that the registered driver was incapable of lawfully operating that vehicle, had the belief that, under common sense, the registered owner was likely the driver, pulled the vehicle over, initiated the stop, cited the individual for being a habitual violator. That common-sense belief that Deputy Mayor had is one that has been recognized by the judges in 12 State Supreme Courts, four circuit courts of appeals across the country. And that is that finding the registered owner of the vehicle as a driver is a common-sense inference absent information to the contrary. Some may argue that the existence of a suspended license would undermine that suspicion, but of the 16 courts that I just mentioned, 11 of them have dealt with this precise situation, and the judges of those courts have indicated that reasonable suspicion continues to exist even in that circumstance. Indeed, the factual predicate for the habitual violator law across the country is that the registered owner may be continuing to drive, and the only thing we're asking here is whether or not there's reasonable suspicion to investigate further. Here, Deputy Mayor relied upon the common-sense understanding that a registered owner, given the pervasiveness of automobile use in the United States, was likely to be driving again, warranted additional investigation. To borrow a phrase from Terry, it would have been poor police work for Deputy Mayor not to initiate the stop in this case and investigate further to confirm or dispel his suspicion. At this point, I would invite any questions from the Court. Mr. Krauss, many of those cases that you referenced involved at least an officer who testified, speaking about in his experience drivers tend to be owners. We don't have anything like that here. We have an officer who said he assumed that. And that's a pretty unusual – you're asking us to make an inference about facts when there are no facts in the record at all, zero. What do we do about that? So to the contrary, we believe that the stipulations are the facts. Well, the stipulation, as I understand it, though, is the officer said he assumed. Yes. Yes. So we don't have any, in my experience, no nothing. So there are two aspects of that. First of them is with regard to the stipulations. The parties have stipulated as to what the relevant facts were. If they believe there was information absent from those facts, they could have and would have done that. I think this Court's cases have recognized, I believe it was the Christian Legal Society's stipulations. Maybe I'm not being clear what I'm getting at. In most cases, officers have testified that, in my experience, so we have some factual basis for a judge to then make a legal conclusion that the officer's stop was reasonable. Here we don't have any facts from the government, from the officer, about experience or realities on the ground, and yet you're asking the judge to make a legal conclusion about certain facts on the ground that are not present in the record. It's almost like a judicial notice of facts not in record. Is that a thing? So what I would agree with is that there is no evidence or testimony as to the history and experience of this officer. Rather, we know that he's a certified law enforcement officer, and none of the cases that I've found have relied upon an officer's understanding of whether or not a registered owner is frequently the driver. Rather, the courts have indicated, as a matter of common sense and ordinary human experience, that the registered owner is likely the driver. Sotomayor, I admit there's three cases that hold that, but not 11. The others do talk extensively about the officer's experience. What I want to know is, and I thought that the Kansas court had somewhat limited or though it had broad language on corroborating, there could be question how corroboration could happen, but in most of the others that Justice Gorsuch is talking about, the officer doesn't say, I assume. He says something more, like, this has been my experience, or this is the training, or the statistics that you put into the record in this case are presented to the judge. Why is the Supreme Court better able than the trial court, who's the finder of facts, to make decisions about what common sense teaches? Or with the lack of anybody with experience in the field, at least there was one judge below who said, in my experience, that presumption doesn't make sense. And I'm presuming that three other courts have said the opposite, but the Supreme Court here, the Kansas Supreme Court, agreed with the judge below. Yes. So let me address a couple of things. First, the assumption. We don't believe there's a legal distinction between assumption, presumption, inference, belief, or the otherwise. I think this Court's cases, whether it be Terry, Cortez, Wardlow, or any of the others, they refer to that term. So the reference as to assumption, we don't read a difference into that. But rather, what we understand is that reasonable suspicion is something of common understanding in ordinary human experience that whether or not the registered owner is a driver is not something that we would look to the law enforcement officer's history and expectations about. Rather, those cases come up, such as Cortez, in which we would have an international trafficking situation. Instead, more like Navarrete, it's common understanding that individuals would be driving under the influence and have certain particular behavior. In Wardlow, flight from the presence of law enforcement officers would be something of common ordinary understanding. Sotomayor, Navarrete had to do with the reliability of the tips, the tip. And not with questions. I know that the majority in the dissent in Navarrete argued about what the presumption should be. That's why it's so dangerous for us to make our own presumptions and not let the fact finder. Well, so a couple of things. One is, I think this Court has done it in Navarrete. There was a reliability issue, but also with regard to whether or not it's sufficient to justify an investigation as to that particular crime. Here, the crime is driving while under the or driving while suspended. And having the But the cause for the suspension can be a number of things that have nothing to do with safety on the roads. It could be, I didn't pay my fine, I didn't pay court costs. It doesn't say anything about the driver's ability to drive safely. That's right, Justice. And was there a way of finding out why the license was suspended? So two things. One is, this Court's Fourth Amendment jurisprudence doesn't look to the underlying crime as to whether or not it's a socially appropriate or a wise policy choice that would justify the suspension. Rather, this officer has an indication that Mr. Glover's license has been suspended and is incapable of lawfully operating a motor vehicle. I'm asking about the technology of it. Was there an easy way, push a button to say, oh, so the register's owner's driver's license has been suspended because? So it's not in the record, but my understanding is the answer is no. But even if there were, this law enforcement officer would not have the ability to say, you know, it's driving while suspended for failing to pay any number of tickets. I don't think I'm going to initiate the stop. Rather, this law enforcement officer knows that the registered owner is incapable of lawfully operating a motor vehicle, and that gives sufficient suspicion in order to investigate further. Much like the conduct that was in Terry, that's maybe perfectly lawful conduct and maybe it's a good idea, maybe it's a bad idea, but the officer at least has suspicion to generate additional inquiry. Do I — and make sure I understand. You concede that if the officer acquires additional information in the course of the stop that suggests that his suspicion that this is the driver with the suspended license is not the driver in that instance, you would not be — the officer would not be able to pursue the stop further? Yeah, I think — If, for example, it's, you know, Mr. So-and-so, who's the registered owner, and the woman — there's a woman driving the car, he would — that would be the end of the matter, right? He would not be able to pursue the stop further? He would not be able to initiate the stop if information to the contrary had been present to him. The archetypal situation is the looking for a 60-year-old man and it's a 22-year-old female. So that would be — that would dispel the reasonable suspicion. We have dealt with that question on probable cause. We have dealt with if there is exculpatory material in the presence of probable cause that a police officer is not required to take that into consideration. You're suggesting a different standard for reasonable suspicion? So I'm not sure I'm understanding you correctly. I think what's — Under probable cause, if a defendant comes and gives you what seems to be a very reasonable explanation for why he did not commit this crime, we don't obligate police officers to investigate that reasonable explanation. We say probable cause exists and the officer can arrest on probable cause. We're creating a different rule for reasonable cause? I don't — Under reasonable cause, you're prepared to say the rule is different. If you have reason to believe it's not the driver, you shouldn't stop the car. I don't believe so. I believe our rule is a totality of the circumstances. And as I understand the Chief Justice — But there's only one totality. Well, so in his hypothetical, the situation was if the officer finds — believes that they're searching for a 60-year-old man and is able to identify that the driver is a 20-year-old female, then the suspicion that initially attracted the officer to that vehicle would be dispelled. That's just an application of the totality of the circumstances. But you say there is no necessity for the officer to make that check. Right. So that's what this Court's cases have historically recognized, is once the existence of reasonable suspicion is there, then there is no necessity to investigate further, such as — And the only basis for the reasonable suspicion is not a totality of the circumstance. It's one circumstance. The registered owner's driver's license has been suspended, period. That's — that's only a factor. What is the totality in addition to — So the totality depends on the particular crime that the officer is investigating. I concede to the Court that the particular facts that the officer knew in this situation are frequently going to be determinative. But rather, our rule permits the recognition that there could be situations that would come to the officer. For example, if, again, it's a convertible and you're able to see the person, that suspicion is going to be dispelled. But what — once the officer in this situation has reasonable suspicion to initiate the stop, then — It would be happenstance that the officer was able to do this because the officer doesn't have to make any effort at all. Once he has — once he knows that the registered owner's driver's license has suspended, he doesn't have to do one more thing. He can — he can do a Terry stop. So he can initiate the Terry stop to ask additional questions. If, in obtaining the license and registration — or, I'm sorry, the registration data behind the vehicle, he's capable — he or she is capable of determining any characteristics of the driver, that's one thing. But, for example, if the driver was expected to be a 60-year-old man and the officer was able to identify the driver and thinks, well, maybe it's a 58-year-old man, it may or may not be that individual, that suspicion is not dispelled. The stop would occur and the officer would approach the vehicle. Kagan.           Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. on common-sense assumption that the drivers of vehicles typically are the owners of the vehicle. Would you agree with that? I think that's — Yeah. Yes. And — and that might be true in our contemporary contingent historical reality. But the next generation, for example, often rents cars. They don't — they don't buy cars. They don't own cars. You're asking us to write a rule for the Constitution that presumably has some duration to it. Is this one with a short expiration date? So, I don't think it is. I think it would be part of the totality that could potentially come up. I would envision a situation in which 20 or 40 or 60 years from now, maybe our operation of motor vehicles are different. And under these same facts, perhaps there's no stipulation, perhaps the criminal defendant that has been stopped would like to cross-examine the officer and say, well, you know, in 2019, the registered owners were frequently the driver, but our life has changed. We've become the BRB or Airbnb of the society. And that would be able — is something that the court would then be able to consider. General, do you know the Florida v. Harris dog search case? You're familiar with that. What struck me in reading this case is that you are asking for a very different approach than we unanimously decided was proper in that case. So, it's a probable cause case, but I don't think that much — makes all that much difference. The idea was that if you have a trained dog and it gives an alert, there's a reason to think that there's drugs in the car. And yet — and yet, unanimously, we said, you know, but at that suppression hearing, a person is entitled to say, that's not all the circumstances that exist. We know something about the dog's history. We know something about the dog's training. We know something about some other circumstance. And I think what you're asking us to do is essentially to say that all of those similar things in this context become irrelevant, because we just have, as Justice Ginsburg said, this single circumstance, which is that a — a non-registered — a non-registered owner is driving the car. Yeah. So, I actually think — Right. You've got it. Yeah, yeah. I actually think that's helpful, because it depends upon what the nature of the inquiry is. Here, it's driving while suspended, and the registered owner and the connection to the driver is common. With regard to a trained dog to sniff out particular drugs, I think there the dog actually alerted to a drug that it was not trained to identify. And so that does — that's a more nuanced characterization than whether or not an individual is driving their vehicle, because, for example — and, oh, by the way, Mr. Glover could have cross-examined on a similar sort of circumstance. Mr. Glover chose not to because the parties agreed what the facts were, and they were driving while suspended. Does it make a difference, Justice Kagan pointed out, that case was probable cause. This is reasonable suspicion. Does the level of inquiry or examination vary depending upon whether it's probable cause or reasonable suspicion? Obviously, both Fourth Amendment, but the inquiry is much lower, or the burden is much lower for an officer to justify a brief investigative decision to confirm or suspect. The threshold is — the threshold is certainly lower. Yeah. But why would it be that we would, just because the threshold is lower, essentially throw out the totality of the circumstances analysis and simply say this one fact is enough? So we are not asking you to throw out the totality of the circumstances. You have to look at the particular crime that's in — that is implicated, whether it's in Florida v. Harris or Ornelas v. I think United States. Those are relatively complicated crimes. I look at the Cortez case in which the number of inferences and deductions in order to identify Chevron as he was scurrying people across the border. Those are some significant inferences that depend upon an educated understanding of the law enforcement officer. I guess I'm just not seeing that. I mean, the question in the dog alert case is are there drugs in the car or are there not drugs in the car. And it's like, well, the dog alerted. That's an awfully good reason to think there are drugs in the car. But still, we're going to go further and say that there are other things that might be involved in a particular case. Yes, briefly. Thank you, Your Honor. So I would say that in this situation, the database alerted that Mr. Glover had a license that had been suspended. He couldn't operate the vehicle. We don't know why the dog alerted, and we had to have information as to the officer's training experience to answer that question. Thank you, counsel. Mr. Houston. Mr. Chief Justice, and may it please the Court. The Fourth Amendment asks police officers to be reasonable. It does not ask them to set aside common sense when they step into the patrol car. The traffic stop at issue in this case was constitutional because it was based on a common sense inference. It was reasonable for the officer to think that Charles Glover might be the person driving the truck registered in his name. That's an inference that police officers use all the time in a range of law enforcement situations as we've seen. But let's – let's – I'm sorry. Please continue. That's an inference that we commonly rely on in a range of law enforcement situations, and the prevalence of the inference supports its reliability. Moreover, this Court has repeatedly explained that reasonable suspicion is a minimal standard. It is significantly less than a preponderance of the evidence and less also than probable cause. The reason for that is that a traffic stop is much less intrusive than a custodial arrest, and the point of a traffic stop, just like every Terry stop, is simply to conduct further investigation. Justice Ginsburg, can I pick up your question? The – you say it's reasonable to infer that the owner is the driver, but it's a little less reasonable, is it not, when the owner's license has been suspended? I think, Your Honor, it is maybe marginally less probable. That's true, but again – But that's true because you're – you're positing that most people who have had their license suspended will break the law. I don't think we're positing that people will necessarily break the law, Your Honor. In every case where you're conducting a Terry stop, you're going to have equivocal facts, and the whole point of Terry is to provide a safe opportunity for the officer to conduct further investigation. But you just said, Mr. Uson, marginally less. How do you know that, that it's only marginally less, as opposed to significantly less? Your Honor, we know that there are hundreds of thousands of citations in this country every year for driving on a suspended license. I think the statistics that are pointed to, the study that's identified at page 41 of Respondent's own brief, talks about some of these statistics. We have other amici in this case that have offered the Court some of the statistics, about 7,000 fatalities involving unlicensed drivers. It's not ultimately, at the end of the day, a detailed statistical question, as the Court has repeatedly explained in cases like Wardlow. It turns on a common-sense judgment that the officer made. Kagan. Kagan. I guess what I'm trying to say is what is that common-sense judgment based on? I mean, I understand that if this goes back to Justice Gorsuch's question, if it were based on a particular officer's training and experience and judgment. But here we can't say that it's based on any of those things. So what is it based on? Your Honor, I think we can — I would respectfully dispute the idea that we can say it wasn't based on the officer's training and experience. I do think that there are going to be a wide range of crimes where reasonable suspicion turns on only one fact. Think of a case like Berkemer. The officer is driving. He sees a car swerving erratically, and he thinks that person might be drunk. Now, they might not, but I have reasonable suspicion to investigate further. There's only one fact. I don't think we would say that the reasonableness of the stop in that case turned on whether the officer came into court and said, here's how often in my particular experience I've found that people who are swerving end up being drunk. I also think that dovetails with a wide variety of this Court's cases which have explained that we don't want the permissibility of a Fourth Amendment stop to turn on something that's unique to this particular officer, how he was trained at this particular time. The Court in Navarrete did not think that the permissibility of that traffic stop turned on the particular testimony that the officer had given. It said instead, the Court said that Kagan. I thought it was the opposite, that we really do want particularistic inquiries here, whether the particularistic inquiry is related to the driver or the officer, that we want some way of saying there's reasonable suspicion in this case, not in – I mean, for example, would you just say, suppose we just had a statistic that said, you know, that, you know, 30 percent of drivers are likely to do this. Would you say that, you know, that alone is enough, if it's just statistical? I'm just trying to find out, like, what's the basis? Is the basis purely statistical? Is it something about a particular driver's experience and training? What is the basis? Your Honor is absolutely right that the suspicion has to be particular and objective. That's the Court's formulation. But when the Court has talked about particular, it means particular to this suspect, not particular to this officer. Indeed, the Court has said, we don't want the availability of a traffic stop to turn on, whether it's made by a junior officer versus a more experienced officer or something like that. But the stop has to be particularized to the information that was known about this particular suspect. That's why I think, to answer Your Honor's question directly, a generalized statistic about how many people in the world commit a certain kind of offense will not generally be sufficient to establish why not. Getting to the particular person, doesn't that have to do with geography? Meaning, I suspect there are some towns in the United States where people don't break the law no matter what. That it would be, you know, if your license got suspended, the police officer knows that in this jurisdiction, that presumption is not a good one. It doesn't work. It might work somewhere else, but without having the officer testify as to where he's doing this stop, we don't know. Absolutely. So you really are asking us to have one presumption based on no evidence? I respect that. Other than a stipulation that says that the driver of that vehicle, or that vehicle belongs to someone whose license has been suspended. Your Honor, we're asking the Court to hold that as a general matter, as a matter of common sense and ordinary human experience, the owner of a driver is very often the vehicle, excuse me, the owner of the vehicle is very often the driver of that vehicle in the absence of information to the contrary. So in a circumstance in which, based on geography or other conditions of the area, there's a different standard and a reasonable officer would know that. That is a generalized statistic then, though, to point out what Justice Kagan was saying. Are you relying on a generalized statistic? And you said no, but in answering Justice Sotomayor, if I heard you correctly, you're basically saying, well, the common sense is based on this general idea that people are driving their own cars. My point to Justice Kagan was a generalized observation about how many people in the world commit a certain crime does not provide a basis for saying that. Well, let me give you a hypothetical. Suppose that a municipality has a law that says everybody has to carry their driver's license with them at all times. And suppose that a particular police department actually did a kind of survey or, you know, a study of their practices and found that actually 50 percent of teenagers do not carry their driver's license with them at all times. All right? So now it's like common sense that if you see a teenager, she won't be carrying her driver's license with her. Does that – does that give the police officer the ability to stop every teenager that he sees? Generally not, Your Honor. I think the court has said that that's what it means for the suspicion to be particularized to the individual. You need a reason to pluck this needle out of a haystack. How is that different from this case? Or, you know, you pull over a teenage driver because you suspect their texting and there's statistics on that. So it's the same hypothetical as Justice Kagan's. And distinguish that from this case. The difference, Your Honor, is that you need a reason – you need – the officer needs something that identifies the particularized suspicion that this driver is committing a crime. There's the particularized suspicion. Look, she's a teenager. I don't think – unless that inference was so overwhelmingly reliable, it correlated so strongly, I guess at a certain point the inference becomes so overwhelming that there's a particular behavior that's so closely correlated with criminal activity that it would provide reason to suspect. So why isn't the requirement, as the Kansas court suggested, that you have to corroborate – and I take that word very generally – that you just got to, if you can, safely – because no one's asking police officers to do things unsafely, okay? But at least drive by and see if it's an older person. Make sure it's not a woman. Do something besides permitting one fact to drive a conclusion that's no different than a generalized statistic. Two responses to Your Honor. First, it's actually not nearly as safe to do that as one might suppose. As we explained in our brief, officers are trained instead to keep their vehicle's position behind a suspect because that's the safest place for them to be. But even in a circumstance where everybody would say you could reasonably attempt that sort of in-vehicle pull-aside-and-peek maneuver, this Court has repeatedly – Well, then why don't you drive by? Plenty of police officers that let someone they want to stop move forward from where they are and then pull in behind them. There's a whole lot of things that could be done to do that. And if the officer does that, Your Honor, if the officer gains that type of information, that absolutely would be part of the totality of the circumstances. But I think this Court has explained in Socolow that where an officer develops reasonable suspicion, a traffic stop is authorized and the permissibility of the stop does not depend on other less intrusive investigatory techniques that the officer might have pursued. You could make the same argument in any reasonable suspicion case. Every defendant would come in and say there's always something that the officer could have easily done to investigate me further short of making a traffic stop. The point of the reasonable suspicion standard is to be a minimal standard because the purpose of reasonable suspicion is simply to conduct further investigation. Thank you. Thank you, counsel. Ms. Harrington. Thank you, Mr. Chief Justice, and may it please the Court. Kansas and the United States ask this Court to adopt a bright line nationwide rule that it is always reasonable to assume that a car is being driven by its unlicensed owner. But in three briefs and now 27 minutes of oral argument, they have offered literally no way for this Court to assess whether that is, in fact, a reasonable assumption, whether it is, in fact, based in common sense. They disclaim reliance on the factual context. They disclaim reliance on officer's experience. They disclaim reliance on statistical evidence. They simply assert that it is common sense in every circumstance and in every community in the country. But that's not true, and that's not how the Fourth Amendment works. Here, the only fact that would give rise to suspicion of illegal activity is the identity of the driver. And it was Kansas' burden to establish that the officer had reason to suspect that Mr. Glover was driving. But the officer stipulated that actually he had no idea who was driving. And the officer decided not to come in and testify at the suppression hearing to explain why he would assume that an unlicensed driver would be driving his car. Kansas should not be permitted now to make up for its evidenceary lapses by relying on a bright line nationwide rule that has no basis in facts or in the circumstances of this case or in statistical evidence. The Fourth Amendment requires a contextual analysis. This Court has repeatedly declined to adopt bright line rules with respect to reasonable suspicion or probable cause. And nothing about this case, excuse me, or this context would support departing from that ordinary contextual type of analysis. In an ordinary case, it will be relatively easy for an officer to establish reasonable suspicion that a car is or is not being driven by its unlicensed owner. But the officer and the state have to do at least that minimal amount of work before they can initiate the seizure. Here, Kansas didn't do that work, and so this Court should affirm. I'm happy to take any questions. Ms. Harrington, that last bit is what interests me, that it's a minimal burden that you would impose on the state. And it does seem like in many of the cases on which the government relies, there's an officer who comes in and says, well, in my experience, owners drive their cars. And if that's all that is at issue here, is that Kansas forgot, neglected to put an officer on the stand to say, in my experience, the driver is usually the owner of the car, or often is. What are we fighting about here? And is this, what's really at stake? It seems to me that it's almost a formalism you're asking for this Court to endorse. So thank you for that question. I think it's certainly not a formalism. So first thing I would say is, the question isn't whether an owner usually drives his car, but whether an owner who doesn't have a valid license usually drives his car. Fine, fine. I amend my question. I oppose it back. It's a very important distinction. The officer will now come in and say, and recite. I mean, we're just asking for a magic incantation of words. Instead of the one I proposed, it's the one you proposed. So maybe he will and maybe he won't, right? We don't know what the officer's experience is. I mean, I think it's going to certainly. Alito, what if the officer, if the officer in this case had said, I was trained that the driver of a car is usually the owner even when the driver has a suspended license? Would that be enough? Well, it might be, but there would be an opportunity for cross-examination about what the training is. Well, there was an opportunity here for your client to put in any evidence that he wanted and to subpoena any witnesses he wanted, was there not? Certainly, Justice Alito, but it was Kansas' burden to make the evidentiary showing. Kansas decided to stipulate, if you look at the hearing transcriptures on pages. Yeah, but that's not responsive to my question. If that was done, if that's all you're asking for, would that be enough? The officer says, this is how I was trained. No, I think you would need an opportunity for cross-examination. You know, I think it's important. And was there an opportunity for cross-examination here? But there wasn't that. If the officer had made that showing, had made that factual assertion, then my client probably would have wanted to cross-examine. But they didn't even do that. They didn't rely on any officer experience. It's not the defendant's job to say. If you could return to my question very briefly, because I think it's antecedent to Justice Alito's. If an officer comes in and says these magic words, whatever they are, right, and that's the sum total of evidence in the case, in my experience, in my training, whatever, is that good enough to satisfy the Constitution in your view? So it may be. But let me make just two points. That could be said in every single reasonable suspicion case, right? There's always something the officer can come in and say. But the point of the suppression hearing is that you want to hear what the officer actually is going to say. And I think it is certainly common sense to think that the rate at which suspended drivers continue to drive is going to vary from type of community to type of community. And could you have asked the officer in this case, just to finish your line of question, that's mine too, could the defendant in this case, did he have the opportunity to ask those questions of the officer? Yes. And I think if the state had chosen to rely on the officer's experience, then certainly we would have asked questions about that. But the state chose not to rely on the officer's experience. And that's up to the state. If the state chooses to truncate its evidentiary showing, it's not up to the defendant to say, well, actually, maybe you should put in evidence about this or that or the other thing, right? That's on the state. And it really is not, it's not a huge burden that the state has to do. Ms. Harrington, do you think it's totally random who the driver is? In other words, it's registered to Fred Jones, but it could be anybody in the world? No. Okay. Do you think it's, the odds that it's Fred Jones are 5%? In other words, there could be, out of 100 people, there could be 95 people, but you don't know, driving the car registered to Fred Jones. But there's a 5% chance that it's him. Are you asking if I think that's enough for reasonable suspicion? No, I'm asking you if you think that. Whether it's reasonable suspicion or not, do you think it is at least a 5% chance that it's Fred Jones? That the owner is driving. That the owner of the car is driving the car. On a suspended license or just in general? Just in general. Yes, in general. Okay. And where are you going to stop? Surely, 1 out of 10. It's Fred Jones' car, it's being driven, and when the officer goes up, he sees that it's whatever Fred Jones is, a middle-aged man and not a teenage girl. Is it still like, is it maybe 1 out of 10 chances? I don't know what it is. You really don't know. You don't think it's 1 out of 10? I think it is probably 1 out of 10 that an owner with a valid license is driving his car. Okay. Well, we know that probable cause is not 50%. Right. It's somewhat less than 50%. And even you are willing to agree that it's at least 10%. Yes. Well, what reasonable suspicion cutoff do you think? Do you think it's 1 out of 5? I can't say because this Court has said repeatedly none of us can say. No, the point is most of us can say. And the reason is because reasonable suspicion does not have to be based on statistics. It does not have to be based on specialized experience. As we've said often, it can be based on common sense. And I'm sure that the number varies. I'm sure if you're in a neighborhood that has a lot of, you know, kids who will drive their parents' car, that's fine. And if it's an area where you don't, that's fine. But reasonable suspicion doesn't depend upon the kind of showing that you seem to demand, whether it's a statistical study or special experience. Mr. Chief Justice, I'm not saying that the State has to put in any particular type of evidence, but if they're just relying on an assertion of common sense, they have to give us some way to assess whether that is a reasonable common sense inference. No, no. I was just going to say if they're relying on common sense, they don't have to give you anything more than common sense. But how do we know if it is common sense? I mean, I think you're already got you to 10 percent. But that's when people, that's about owners who have valid licenses. I think it's, I think it is not at all common sense. It's the opposite of common sense. I think that someone having a suspended or a broke license is going to have no effect at all on whether they drive. I think the inference cuts the other way. We know somebody's already broken the law. In some sense, he's got a suspended license. I think it's probably more likely than not that he would break the law saying you can't drive with a suspended license. So first, you know, the facts on the ground suggest that we don't know that, because in many States, it's the inability to pay fines that results in a suspended license, not criminal activities. But second, this Court has never, ever held or come close to holding that evidence that you committed X crime is enough for us. But this isn't, this is collateral to your basic proposition. Your basic proposition is that it doesn't rise to the level of reasonable suspicion to think that a car registered in Fred Jones's name is being driven by Fred Jones. That's different than the collateral point about whether he's more or less likely because the license is suspended. No, that's not true. Our basic proposition is it's not a reasonable inference when Fred Jones does not have a valid license, right? And it's not reasonable to think that the statistics or the rate of driving on a suspended license are going to be the same in every community in the country. If someone lives in Manhattan or Chicago or downtown D.C. and has a suspended license, I think it's significantly less likely that they're going to drive on a suspended license, because they have access to public transportation and Uber and all these things to get to the places they needed to go, compared to someone who lives in, say, rural North Dakota or some other place where there isn't public transportation. In your opening, you said it would be relatively easy for the police to establish whether the driver is the owner. What are you basing that on? Well, to establish a reasonable suspicion, I mean, there are a lot of things that they can do. So, first of all, an officer could come in, as I said, and testify and say, well, you know, in my experience, nine times out of ten, when this kind of hit comes up on the computer, it ends up being the suspended owner who is driving the car. An officer could say the information that came up on the computer was that this person had previously been caught driving on a suspended license. That's what's going on. Breyer. Can I go back for a second to the Chief Justice's question? Because I had exactly the same reaction, and I'd like to finish with that or just step further. I go outside. We go outside. There's a car driving. We happen to know the license plate, and the license plate tells us that Charles Smith owns the car. We see a friend. He says, I reasonably suspect that it's Charles Jones driving that car. Would you say the friend is wrong to reasonably suspect that Charles is driving the car? No. The answer is no. Now we add another fact. I would like to tell you a fact. On my side this time, the State told you the other fact. I'm telling you this one. His license was suspended. Now he says, you know, that's a good point, but I still reasonably suspect he's driving. Now, would you say that now that person is wrong? Yes, you would, but you're asking me to say that that person is a question, but the question you're asking me to say that that person who still suspects that Charles is driving is unreasonable. That's pretty tough for me to say. It's pretty tough for me to say that that person's wrong, unreasonable, when he still suspects it. Now, there we are, and I can't get any further in this case. Now, it may be that you have found some precedent that shows that this initial reaction, which I'm showing you, is totally wrong, and I'd like to know what it is, because I'll go read it. Well, I'll point to basically all of this Court's Fourth Amendment cases, which say you have to look at the totality of circumstances. We just did. And you can't just assume illegal activity based on one isolated fact. I'm not assuming illegal activity. You are if you think that he has a suspended license. It happens to be. But all I'm assuming is a fact. All I want to know is a fact. Is Charles driving the car? That's different from the teenage thing. Justice Breyer, I would point you to Brignani-Ponce and Brown v. Texas as two good examples. United States v. Brignani-Ponce. I won't try to spell it here, but it's in the briefs. And Brown v. Texas. Those are two cases where this Court has said you can't do basically what you're saying. In Brown v. Texas, there was someone in an alley walking away from another person in a high-crime area, and the officer stopped him and, you know, did Terry stop, basically. And the Court said it's not enough that he was present in a high-crime area where the probability that he was doing something illegal was higher than if he had been somewhere else. Not enough. You need something else. And there's a footnote saying, including just the officers explaining why, in his experience, the presence there. Ginsburg. So what is the something else? I mean, if you're referring to an experience, then you're making a distinction between the rookie cop and the one who's on the beat for a long time. And so maybe you know something more about the driver's history. It could come up that, you know, Mr. Glover was charged in this case with being a habitual offender. One way to be a habitual offender is to have been convicted three times of driving on a suspended license. If that's something the officer knew. I think I asked the question whether there's an easy way to find out what was the reason for the suspension, and the answer to that question was no. For Kansas, for this county at least. But that's probably going to vary from community to community. I'm sorry to interrupt you. Tell me how you think the police can safely verify that their suspicion that the owner is the driver is accurate. So as I said, you can do things short of verifying it, right? You can rely on your experience. If this hit comes up, a nine hundred out of ten, it's always the suspended owner who's driving. If you know something specific that this person has previously been caught driving on a suspended license. But also, you know, this stop happened in a sort of, in an area where there were multiple lanes of traffic in every direction. There was a stoplight at the corner. It would not have been dangerous or difficult for the officer to pull alongside the car and take a glance and see is this an African-American man. Do you have statistics to support that proposition? I don't. That it wouldn't have been hard for the officer to pull up next to the car and look over? I do not. No, Mr. Chief Justice. But that is certainly part of what officers do. You know, they examine the circumstances and the factual surroundings. I have noticed since taking on this case, just driving around, how easy is it or how difficult is it to see the face of a driver in front of me just by looking in their side view mirror, their rear view mirror. And there are certainly circumstances where you can do it and it's not difficult. But if he peers into the window and his glass is tinted and he can't see, so you're saying if he, in that case he can't make the stop, he has to let the driver go on. Unless he can rely on one of the other several things I've mentioned, like his experience with these types of things. I mentioned one of the problems with experience, that you're making a distinction between the rookie cop who doesn't have any experience and the veteran. But that's going to be true in every Fourth Amendment context, right, where you're relying on officers' experience. If they have no experience, it's going to be harder for them to justify their reasonable suspicion. Ginsburg. What about the manual that says stay behind the car that you suspect? So if such a manual exists and it's not in the record, you know, then you would need to rely on one of the other methods of establishing reasonable suspicion. One thing officers often testify about is how the person that they're suspecting reacted to the officer's presence. And so if suddenly the car slowed down in a way that seems suspicious or took a sudden turn, that could be a factor in, you know, a tile in the mosaic of circumstances that would be relevant. You want the officer, therefore, to follow the driver, and your brief suggests this, until they make a lane change or until they go too quickly on the right turn on red or don't come to a full stop. In what sense does that rule make? So I think that's one option. And this Court said— That's an option you articulated in the brief. And I'm trying to figure out what purpose that would serve. Just, okay, instead of stopping right away, I'm going to follow you until you go 31 into 30, and then I'm going to immediately pull you over. Well, you would follow until you had probable cause of some traffic violation. And this Court said in Delaware v. Proust that that is the way that these laws about licensing and registration are generally enforced. But if I understand you correctly, Ms. Harrington, you don't really require that a police officer goes and checks out who's sitting in the front seat. A police officer could do neither of those things, as long as the police officer shows up to the suppression hearing and says, I based this on my training and my experience and subjects himself to some form of cross-examination. Just like the usual way, right. You talk about— How much experience does he have to have? How many times does he have to stop a car because he thinks, well, I guess he can do it. How does he get experience if he can't do it the first time? Well, I mean, if he has some other basis to do it or, you know, he's driving with someone. I don't know. I mean, it's just like the dog, right. It's like, you know, somebody certifies me, somebody trains me. I've seen this done by my partner. I've heard about it being done by other people in my department. It's just you subject yourself to something, which is the point of suppression hearings, isn't it? Right. I mean, this Court held in Ornelas v. United States that courts should defer to the reasonable community-based experience, not only of law enforcement officers, but also of trial judges. That was a probable cause case, right. Probable cause, although it's still less than 50 percent, is significantly more than reasonable suspicion. That's absolutely true. So it may be the case that you don't need the same level of training and experience and background to make the assumption that you've already said is at least 10 percent. You may need less, but the type of analysis you would go through to determine if there is reasonable suspicion, there's no reason that it would be different than in a probable cause case. Let's say a police officer pulls up behind a car after having his behind the car, after having obtained information that the registered owner of the car has a suspended license. What are all of the considerations that you think the officer has to take into account before initiating a stop? Checking, trying to check with headquarters as to the basis for the license suspension. Whether it's an urban area or a rural area or someplace in between. Whether it's a highway or a city street. Whether it's raining. Whether it's dark. Maybe whether it's a law-abiding community where people who have suspended licenses never drive. The officer has to take into account all of those factors before initiating a stop. Not necessarily. He just has to take into account the full sort of factual context and make a judgment about whether he has reason to suspect that the owner is in fact driving the car. And after having done that, and when there is a motion to suppress, the judge has to take into account all of those factors. Well, it wasn't really a rural area or a city. It was sort of in between. And it was raining, but it wasn't raining hard. All of those things would depend on an evaluation of all of those factors. Just like in any Fourth Amendment case, Justice Alito, you have to look at this, the full factual context. And here, we did not hear from the local law enforcement officer at the suppression hearing. We did hear from the local trial judge. And she said in her experience, based on her life in the community of Lawrence, Kansas, this was not a reasonable assumption. And Ornella said you should defer to that just as much as you should defer to the officer's experience. Is it your argument that reasonable suspicion can never be based on a single fact, on just one fact? There always has to be more than one fact. Not necessarily. It depends on what the fact is. If the fact is inherently suspicious, if you see someone running out of a bank with an alarm going off wearing a ski mask, that's probably enough to raise reasonable suspicion. How about a swerving car? So a swerving car, it would depend on the situation. In Navarrete, it wasn't just the car was swerving. So sometimes yes? Sometimes yes. So in Navarrete, the car had run another car off the road. And this court did studies about sort of the observable behavior of people who were driving. Then on the question Justice Kagan followed up with you on saying that you weren't really arguing that the officer had to do more to follow the driver, on page 35 and 36 of your brief, you specifically say that. I say the officer can do that. That's one of the things the officer can do. We're not trying to say so we're not asking for a Bright Line rule in our direction. But you said there that it's relatively easy for an officer to do this by tracking the driver until the driver does some minor traffic violation, and then you can pull the driver over. Which is what this Court has said in Delaware versus Grisham. That's the ordinary way of enforcing these types of laws. However, Delaware, that case did not involve someone with a suspended license. They were looking for people who were unlicensed. That's what they were looking for, but they didn't have information that the owner of the car in question had a suspended license. They didn't know, but my point is. That was the whole point. In fact, the last paragraph or page of the opinion specifically distinguishes that situation. Yes, Justice Kavanaugh, that's absolutely true. My point is only that the Court said that that is just the ordinary way that you enforce these laws, and so there's nothing extraordinary about my saying that's one option. When I'm talking in the brief about how it is relatively easy for officers to do this, what I'm saying is there's no reason to depart from the ordinary Fourth Amendment contextual analysis to adopt a Bright Line rule. There's no special safety justification. I'm just trying to figure out what sense that makes. I don't want to dwell too long on this, but you made a point of it in the brief of, yeah, the officers should just follow them around until they do something wrong on the traffic laws. Do you think that really is a sufficient basis to stop someone in this exact circumstance if they'd gone another mile down the road and would have been fine because he swerved or just barely exceeded the speed limit? I think if the officer has no other basis for having a reasonable suspicion that the suspended owner is, in fact, driving, but they kind of have a hunch and they want to follow up on the hunch, then they can just follow the person until that. You're encouraging pretextual stops. No, it's not pretextual if they see something that raises probable cause for some other violation. This Court has said that's fine. It doesn't matter what the subjective motivation was. If they see something that objectively creates probable cause to make a traffic stop, they can do that. You mentioned peering into the window. Is that something that could be done? In some cases, yes. I mean, so our point is just there's a whole number of them. I hope I didn't interrupt you if you have more to your question. There's a whole number of things an officer can do to, you know, to do more than just say I'm just assuming that the unlicensed owner is driving the car. But it does seem, I think the word formal was used after this case. Suppose you're right. In every case, what happens is that the police officer goes to the hearing, testifies either my manual said stay behind the car, or in my experience, when I've done stops, it's the registered owner who's the driver. That would be that's okay. That would probably be fine. And I say probably only because this Court has said we don't adopt Bright Line rules, so I don't want to give sort of absolutist answers. Well, if that's the case. I'm sorry, Chief. He doesn't have to say that in his experience the registered owner is the driver, right? He just has to hit one out of ten times. Or two out of ten. Maybe. In my experience, you know, I've done ten of these and twice it was the driver, and that strikes me as the right number for reasonable suspicion. It might be enough. This Court has never put a number on it, has said a number of times it can't put a number on it, and so I can't put a number on it. But that might be enough. It might not be enough. Well, if it is, and if your answer to Justice Ginsburg is correct, that all an officer has to say is in my training or experience, one out of ten, one out of twenty, it's been the driver who's the owner of an unregistered car. Unlicensed. Unlicensed. Yeah, right, right. Then why is it why shouldn't we read the declaration here as effectively saying that, that I assume, I'm an officer. This is what I do. Right. I assume this is the driver. This is Kansas. This is the owner, okay? Touche. Why isn't that a fair reading, though, of the declaration before us? And then it becomes incumbent upon the defendant, if the defendant wishes, to raise questions, just as a defendant might, about the dog's training and sniffing abilities and record with different substances, to raise some questions about the officer's training and experience, or locality circumstances in Lawrence, which is a very law-abiding community. I'm sure. Or whatever. Why shouldn't we read this as effectively exactly what you say would be sufficient? I think the simple answer is because it isn't. That isn't what it says. It just said he assumed that the owner was the driver. I understand literally counsel. It says it's a different formulation of words. But why isn't it functionally? Why isn't it practically? Why isn't it really exactly what we're talking about? It doesn't say I assume that an unlicensed owner is the driver. It just says I assume an owner is a driver. So it's all magic words. It's not magic words. Like I said, it's not going to be very hard in most cases. But the State has to do the work. I read the lower court, the Supreme Court, Kansas Supreme Court's words. Literally it said when a court draws inferences in favor of the State based on a lack of evidence in the record, it impermissibly relieves the State of its burden. Right. And very carefully it says here the problem is not that the State necessarily needs significantly more evidence. It needs some more evidence. Right. I think that has to be true. And the Kansas Supreme Court said I'm not even going to try to list all the different ways you could do it because there are so many, but you have to just do something. And that's sort of all the rule we're asking for. That's what this Court has said time and time again in its Fourth Amendment cases, that you have to look at the totality of circumstances. You can't just rely on a single sort of single fact that has a probability-based correlation maybe to a crime. You have to come in and explain the basis for your suspicion. My friend Mr. Crouse talked about Terry, but Terry did not adopt a bright line rule that any time someone walks past a store window three times you automatically have reasonable suspicion. Right. They relied on the officer's experience, his observations of other things that were going on. That's all we're saying in this case you should do. Just rely on other things that were observed, other things the officer knew. Maybe in his experience the database is extremely unreliable. Well, that would be something that's relevant to know. Maybe in his experience it's extremely reliable also would be relevant to know. We just need something more. Do you think in Terry they needed statistics about the percentage of people who walk by a window three times who have some criminal intent? No. In Terry there wasn't a sort of probability-based suspicion. But also, I want to be clear. We don't think the State needs statistics. Kansas relied on statistics in its opening brief to this Court. We think they were bad statistics, and it's amici statistics or bad statistics. They're not relevant to the central question in this case. And so our point in our brief in discussing the statistics is at least you have to rely on good statistics. Right? Well, you said something that certainly caught my attention. I thought the officer was probably saying the right thing. In my experience, people who own cars are likely to be the drivers. End of the matter. Until you point out, not them, you point out that here the driver had lost his license. Now it becomes more difficult. But you keep saying not a bright-line rule. I don't think it's a bright-line rule. I don't see that. You want to add other things. What other things? And if there were other things that were relevant to this, why not call the officer and ask him about them? And if you want to say, no, no, that's unreasonable given my fact, given my fact, you probably didn't say that because actually the statistics show 75 percent, 60 percent, but not here, da, da, da. Okay, we're into that. But what is it, what is it that you think is that extra thing in the facts here that should have been in? I mean, I've listed, like, ten things he could have done and he didn't do any of them. I didn't say that. I said, what is it? I'm not talking about what he might have done. Yeah. I'm saying what fact is there other than the two he pointed to and the one you added that you think was relevant? So the behavior of the driver could have been relevant. It could have been relevant whether or not. No, I'm not asking could have been. Well, I don't know because they didn't come forward. All right. So your point is you should decide all the facts. But I can't point you to a fact that wasn't, that was relevant and wasn't decided. I mean, you say they shouldn't just do. How about his experience in training? Yeah. I mean, he could have testified about his experience in training. Maybe in his experience, you know, nine times out of ten or 99 times out of 100 when he pulls someone over in this circumstance, it's not the unlicensed owner who's driving the car. We just don't know. Right? They need to come in. Under the rule that Kansas wants, anytime someone borrows a car that's registered to an unlicensed owner, there's literally nothing she could do to avoid being seized. Right? If you adopt this Bright Line rule, there's nothing she could do to avoid being seized. That has to be evidence, strong evidence that the rule is overly broad. So what you are proposing is either a trivial decision or a revolutionary decision. It's a trivial decision if all that's lacking here is a statement, I have been trained that blah, blah, blah. It's a revolutionary decision if in every case involving reasonable suspicion, there has to be a statistical showing or an examination of all the things that you think are necessary here. Is that not right? May I answer? Sure. Justice Alito, what we're asking for is that the ordinary Fourth Amendment contextual analysis be required in every case. It doesn't require statistics in every case. It doesn't require any magic words. It just requires something to support the reasonableness of an assumption. Thank you. Thank you, counsel. Three minutes, General Krauss. Thank you, Mr. Chief Justice, and I'd like to first start with regard to the officer's training experience and lack of testimony. The reason that isn't in this case is because Mr. Glover stipulated the facts below and failed to raise any question as to the officer's training and experience until the red brief in this Court. See page 4 of our reply brief. Wait a minute. Whose burden is it? Isn't it yours? You have to prove the facts. We have proved the stipulated facts. They didn't challenge those facts. Well, you proved that fact, but they don't have to if you don't prove enough. So they didn't. You could come in and say he wore a red hat, that's why I stopped him, and they would come back and say that's not enough to make out reasonable suspicion. So if what they're saying is making an assumption without telling us what the basis of that assumption is, is not enough. So the point is they stipulated the facts that were relevant to the determination, and the Kansas Supreme Court made a determination as to those facts. My point is that didn't arise until the red brief in this Court, and so we don't think it's fair to criticize once they've agreed. If they wanted to indicate as to what the statistics were, they had an opportunity to call that officer and cross-examine him. Second, with regard to waiting for a violation, as Justice Kavanaugh talked about, we think that's a perfectly reasonable situation, if we're going to eliminate reasonable suspicion. Rather, if there's a traffic violation, that's probable cause for a stop, and that's not a basis. This Court's decision has indicated that you don't have to wait for a probable cause in order to initiate a stop. And so I think your question was right on. Third, statistics. We agree with the red brief that indicates that statistics are rarely present and frequently are going to be distinguished by the parties, and so we don't believe that statistics are relevant. Fourth, we also believe that the Court's decision is not a reasonable situation. Ginsburg. And may I go back to the stipulation you said? Kansas drew the stipulation, right? The parties drew the stipulation, agreed to them, and presented them to the Court. So it was a joint stipulation? The parties stipulated, yes, Your Honor. The fourth point I would like to make is that the Fourth Amendment does not and should not apply differently based upon the age and experience of the officer or the time of day of the Fourth Amendment. The rule that Respondents proposed would require the officers to let this vehicle go at night because it's impossible to identify. This Court's case, except for, I believe, a no-knock warrant, does not do that. Certainly the reasonable suspicion cases do not do that. And fifth, the States have a strong interest in regulating the roadways of the traffic situation here, and they have a strong law enforcement interest. For example, if there is a report of a child that had been ---- You can finish your thought. Thank you. A child that had been abducted and we were looking for the mother, the officers would be reasonable to rely upon the license plate. Thank you, Your Honor. Thank you, counsel. The case is submitted.